### F. M. Bagley v. The State.

No. 1386. Decided November 15, 1911.

**1.—Passing Forged Instrument—Indictment—Bad Pleading.**

Where, upon trial of passing a forged instrument, the pleading was confusing as to the parties alleged to have been defrauded, and did not connect them up properly or show how they were defrauded or how their property rights were affected, the same was insufficient.

**2.—Same—Instrument not Subject to Forgery—Notarial Seal.**

Where the instrument required a notarial seal in order to make it valid, and the instrument declared upon was without any notarial seal, and was one of those instruments that can not be made the subject of forgery by any character of pleading, the prosecution must be dismissed.

**3.—Same—Insufficiency of the Evidence.**

Where, upon trial of the passing of forged instrument, the evidence did not support the allegations in the indictment, the conviction could not be sustained.

**4.—Same—Jurisdiction—Insufficiency of Evidence.**

Where, upon trial of passing a forged instrument, the evidence did not sustain the jurisdiction of the court, the cause must be reversed and remanded.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of passing a forged instrument; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Goodson & Goodson,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of forgery. The case presents rather a novel condition of things on the face of the indictment. The original indictment, properly certified and designated, has been sent up by order of the trial court for the inspection of this court. The indictment contains two counts, one for forgery, and the other for passing the alleged forged instrument. It is unnecessary to notice the first inasmuch as it was not submitted to the jury, and therefore, passes out of the case.

1. The second count charges that appellant willfully, knowingly and fraudulently passed as true, to W. H. Davis, a false and for·· instrument in writing, which had theretofore been made without  ̄ ̣ ful authority and with intent to defraud, and was then of the ̤ following: Then sets out two instruments, one is a certificate of ͻ̣ made out for the Lone Star Insurance Union, Paris, Texas. We ͻ̔ it unnecessary to set this out in full. We think it is sufficient to that the instrument was intended to show that the wife of appella... died in Alabama on the 2d of January, 1911, and this certificate is signed by Dr. O. L. McWhorter. The other instrument attached to and made a part of the indictment, purports to be an affidavit before J. A. J. Tomlin, a notary public in and for the county of Cherokee, in the State of Alabama, and is signed by Dr. O. L. McWhorter, at least the indictment alleges that the signature in both instances is Dr. O. L. McWhorter. An inspection of the original document is not convincing of that fact. But be that as it may, the affidavit is without a seal. There is a place for the seal, but the seal is not there. There is a seal attached to these papers on a blank piece of paper, which

blank piece of paper is pinned to the affidavit, and if it can be considered as having any connection with the affidavit, it is by reason of the fact that it was pinned to it. There is nothing on the face of the paper to show that the seal was intended for it. It is simply impressed upon a blank piece of paper. The indictment then proceeds as follows: "And by way of explanatory and innuendo averments it is alleged that theretofore the said Lone Star Insurance Union, had issued an insurance policy upon the life of the wife of the said F. M. Bagley, to wit: the said Charity Bagley. The said Charity Bagley being the beneficiary named in said insurance policy. That as a condition precedent to the payment of said insurance policy, the said Lone Star Insurance Union, demanded and required that proof of the death of the said Charity Bagley be made and signed by the physician attending her during her last sickness or by the undertaker who attended her after death, and required that proof of such death must be attached to an oath before a notary public with seal." Then follows an allegation to the effect that Charity Bagley did not in fact die as stated in the certificate, but that she was still living, etc. And also follows some explanatory averments and statements to the effect that they intended to write the name of Dr. R. L. McWhorter where they wrote the name of Dr. O. L. McWhorter, and denying in fact that Dr. McWhorter signed it, and that Tomlin, in fact, as notary public, swore the said McWhorter. Then follows this:

"That the purported notarial seal of 'J. A. J. Tomlin, N. P. Ex. Off., J. P., Cherokee Co., Ala.,' which was impressed upon a blank piece of paper and said paper attached and pinned to said 'certificate of death,' and said 'affidavit' was not in fact and in truth placed there by the said J. A. J. Tomlin, nor by his authority; that the said 'certificate of death' was made by the said F. M. Bagley and is absolutely as above shown; that the said 'affidavit,' as made, is not on the same piece of paper as said 'certificate of death,' but is on a separate piece of paper and is authentically as above shown and is attached to same by being pinned thereto as above shown; that the purported notary seal of the said J. A. J. Tomlin is on a separate piece of paper and is attached to said 'certificate of death' and 'affidavit' by being pinned thereto. That said 'certificate of death' and said 'affidavit' were falsely, willfully and fraudulently made, without lawful authority, by the said F. M. Bagley, for the purpose of swindling and defrauding, and were made for the purpose of misleading and deceiving said insurance company and to make it appear that his said wife, Charity Bagley, was dead, when in truth and in fact, she was not dead, for the purpose of collecting the amount named in said insurance policy from said insurance company and applying the same to the use and benefit of him, the said F. M. Bagley, contrary to the statute, etc., and against the peace and dignity of the State."

Several grounds are urged against the validity of these pleadings of a general and special nature and character. We are of opinion that

they should have been sustained. The indictment began by charging that appellant passed as true, to W. H. Davis, the instrument, and closes the indictment, after getting through the innuendo and explanatory averments, as they are termed, by stating this was done for the purpose of defrauding the insurance union or company located at Paris, Texas. There is no pleading, or statement or allegation in the indictment anywhere, that connects Davis, in Comanche County, with the insurance company at Paris, Texas. There is no averment or allegation indicating either directly or indirectly how the passing as true, these instruments could have affected the insurance company at Paris, in Lamar County, Texas. There seems to be somewhat of a hiatus in this connection, and there also seems to be a want of effect and cause or conclusion from the prior statement in the indictment. If the passing of this instrument to Davis as true, if it was a false one, in order to affect any property rights or the transfer of money from the insurance company to Bagley, Davis must be legally shown in some way to be placed in relation to that company so that the passing of the instrument to him as true would have affected that company. This is emphasized by the fact that the indictment charges that the instrument was passed to Davis for the purpose they say of defrauding the insurance company. Davis is not alleged to have any connection with the insurance company in any manner whatever. This would render this count of the indictment invalid.

2. It is also contended that the instrument is not such a one as would be the subject of forgery. The indictment alleges that the proof of the death of Charity Bagley should be made and signed by the physician who attended her during her last illness, or by the undertaker who attended her after her death, and requires that proof of such death must be attached to an oath before a notary public with a seal. In order, as we understand this pleading, to constitute this any character of a valid instrument, these matters must be shown. The instrument declared upon must be in such condition as the indictment required by its allegations; that is, if Dr. McWhorter attended Mrs. Bagley during her last illness, he should make the affidavit of her death. And if the undertaker attended her after death, he should make an affidavit. That either one or the other must make the affidavit, and the company demanded and required that such proof should be made in regard to the death, and not only so, but this certificate must be attached to an oath before a notary public with a seal. The original instrument as sent up for inspection of this court, shows that there was no seal attached to the affidavit, if in fact any affidavit was ever made. There is a document purporting to have been sworn to by Dr. McWhorter. It purports to have been signed by Dr. McWhorter, and the same instrument states it was sworn to before J. A. J. Tomlin, a notary public, on the 5th of March, 1911, but there is no seal impressed upon this affidavit, and in fact, if we go to the

record, there never was any seal impressed upon it. There is a blank piece of paper attached to it with the seal that purports to be that of a notary public, but this will not suffice. The affidavit itself must have the impress of the seal in order to import verity. We can not say that the acts of notaries public in the great affairs of life can be verified in that way, or held to be notarial acts. We are, therefore, of opinion that these papers show upon their face that it was not the act of a notary public, and that by no sort of pleading can the instrument be shown to be a valid one. It is one of those instruments that can not be made the subject of forgery by any character of pleading. Where the seal is omitted from a purported affidavit taken before a notary public, no pleading of any character can place the impress of that seal upon the paper, or show that it was ever on the paper. It must be there as a fact. The indictment alleges, and the evidence will sustain it if we go to the facts, that it was a matter of contract between the insurance company and those who are insured in it, that this character of proof was demanded by the company as a matter of contract, and the party taking out a policy having agreed to this, would be bound by it; at least the company is bound by its rule. The indictment recites that the company demanded this character of proof. They have an affidavit without the seal. Therefore, we are of opinion that this instrument is not such a one as can be made the subject of forgery. Such has been the holding in Rollins v. State, 22 Texas Crim. App., 548; Daud v. State, 34 Texas Crim. Rep., 460, and Carder v. State, 35 Texas Crim. Rep., 105. Article 537, of the Penal Code, requires that the instrument declared upon must be such as would have affected property had it been true. If this instrument was true, as required by the statute and not a false one, it would not be the subject of forgery, because of a want of a seal, and this was necessary under the demands or rules of the company and as part of the contract between the insurer and insured.

3. We are of opinion that the evidence is not sufficient. The allegation is that appellant passed the instrument to W. H. Davis. The indictment nowhere shows that Davis had any connection with the insurance company in such manner as would authorize him to receive this paper, or that would constitute it a passing to him. The face of the pleadings would exclude the idea that it could have affected any property or money so far as Davis is concerned, and the indictment having alleged that it was passed to Davis in order to defraud the company, evidence would be required to show that there was a legal connection between Davis and that insurance company. This is not averred. Therefore, there could be no evidence to justify the conviction from that viewpoint—that appellant passed the instrument to Davis for the purpose of defrauding the insurance company.

4. Again we think the evidence is insufficient to show that Comanche County had jurisdiction. When we go to the evidence, it is shown that Davis was the local secretary or officer of that insurance

union in Comanche County; that his authority in matters of this sort where death occurred, was to furnish the blanks to the beneficiary for the purpose of making out the death certificate and the affidavit to be made before a notary public. This ended his connection with the matter; he had no further connection with it, and had no authority to receive the physician's or undertaker's certificate, or the affidavit of a notary public. They went to the home office at Paris, Texas, and the home office at Paris was the only office in the company authorized to receive such evidence. It was upon this evidence, if it was satisfactory, that the policy was to be paid. Davis testified, as a matter of fact, that appellant, after he secured these documents, brought them to him and asked him to forward them to the home office at Paris, which he did as an accommodation to appellant, but this was outside of his agency or relationship to the insurance company, and was simply as an accommodation. Davis was not in a position to receive it officially, and he occupied the same relation to appellant in forwarding these documents to the home office as any other citizen who had seen proper to accommodate appellant. This does not come within the meaning of our law in passing a forged instrument. There was no intent or purpose to defraud Davis. It was a request by appellant to forward it and an accommodation by Davis in doing so. It might be stated here, in passing, that appellant was shown to be an illiterate man and could not write. Jessep v. State, 44 Texas Crim. Rep., 83.

Again, an instrument, to be the subject of forgery, must be of a character as would be calculated to deceive, if it was true.

For the reasons indicated, the judgment is reversed and the prosecution is ordered dismissed.

*Dismissed.*